UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRELL D. HALL,<br><br>    Plaintiff,<br><br>    v.<br><br>PELICAN BAY STATE PRISON; et al.,<br><br>    Defendants.<br>                                                 / | No. C 13-5580 SI (pr)<br><br>**ORDER OF DISMISSAL WITH LEAVE TO AMEND** |

## INTRODUCTION

Terrell D. Hall, an inmate at the California State Prison - Sacramento, filed a *pro se* civil rights action under 42 U.S.C. § 1983, and later filed an amended complaint. His amended complaint is now before the court for review under 28 U.S.C. § 1915A.

## BACKGROUND

In his amended complaint,[1] Hall alleges the following about conditions at Pelican Bay State Prison, where he was incarcerated last year:

From May 10 - June 10, 2013, he was fed "half portions and [his] food was spit in and looked as it was microwaved in the food at times." Docket # 14 at 3 (errors in source). He wrote an inmate appeal about the matter. His inmate appeal suggests he did not see anyone spit in it and instead merely assumes it was spit in because it had a glossy or moist appearance. *See* Docket # 14-1 at 13; *id.* at 15 ("my food looks glossy like it been spat in"). According to the prison officials' response to the inmate appeal, no one had spat in the food, and the glossy appearance was due to contents and cooking techniques (e.g., food with cornstarch sauce has a

---

[1] The text of the amended complaints at Docket # 14 and Docket # 17 is the same.

1 glossy appearance, and food with fat on surface has a glossy appearance). *See id.* at 7, 16. They
2 also responded that the prison had a standardized menu with nutritionally adequate meals, and
3 that plaintiff should follow the established procedure and talk to the floor officer at the meal
4 time to have his food tray checked and get any food problems resolved then. *See id.* at 7, 10.

5 Plaintiff also alleges that he was subjected to retaliation, possibly by prisoners. He
6 provides no understandable details regarding retaliation. *See* Docket # 14 at 3.

7 Plaintiff next alleges that several correctional officers slandered him by telling other
8 inmates that he said he was homosexual, was watching the other men and wanted to look like
9 a girl. Docket # 14 at 4. Correctional officers allegedly put "homo-perferred hormone pills in
10 [his] food" and gave him a "homo perferred hormone shot." *Id.* (errors in source).[2] He further
11 alleges that someone must have given him shots during the middle of the night because he had
12 needle marks on his body but did not use needles. *Id.*[3] He allegedly received 4 Nutrens (a
13 nutritional supplement drink) a day "out of nowhere" from a doctor. *Id.* at 5. A "psych" doctor
14 allegedly told him he was delusional when he told the doctor of his litigation activity, his food
15 concerns and the rumors of him being homosexual. *Id.* Plaintiff allegedly asked to be removed
16 from the mental health care program. *Id.* Plaintiff allegedly asked for "a blood test to see what
17 type of unusual stuff (as in homo perferred hormones which [he] never asked or signed for at no
18 point coming through the prison or jail system) was in [his] blood." *Id.* at 7 (errors in source).
19 His blood allegedly was tested "for some other stuff and not what [he] asked for." *Id.*

20 Plaintiff alleges that officers "corrupted" his legal mail by opening, reading and rewriting
21 it. *Id.* at 6. This he apparently inferred from the fact that someone didn't receive a piece of mail
22 he sent. (His other allegations on this point are too confusing to understand.)

23

---

24 [2]Alternatively, plaintiff may be alleging that he was developing things on his chest and
25 buttocks due to hormone shots he had received at another prison on an earlier occasion – the allegations are unclear on this point.

26 [3]In a statement attached to the amended complaint, plaintiff wrote that the "only logical
27 reason" for him receiving the Nutrens protein drink was because prison staff observed his weight and "the marks from want I assume is needle mark which I would wake up and see marks on my body. I don't use needle, I don't like needles. I wouldn't feel anything throughout the night. Just
28 wake up and would see them." Docket # 14-8 at 1. He asked a nurse about the problem and "she just blow me off like I was crazy or an addict that use needles." *Id.*

2

Plaintiff has filed similar claims in the past. In *Hall v. San Joaquin County Jail*, he alleged that jail officials spit in his food and served him reduced or altered portions of food which caused him to suffer weight loss. *See Hall v. San Joaquin County Jail*, E. D. Cal. Case No. 2:13-cv-324 AC, Docket # 63-1 at 6. He also alleged that jail officials had told other inmates that he was homosexual and "had 'tits,'" *Id.*, Docket # 24 at 3. In another action, plaintiff alleged that on the day he arrived at Deuel Vocational Institution, he received a shot that was supposed to be for hepatitis but that instead caused him "to experience[] various changes in his body ('deformations') that only gay men supposedly exhibit." *See Hall v. Deuel Vocational Institution*, E. D. Cal. Case No. 2:13-cv-746 DAD, Docket # 19 at 3. He further alleged in that action that prison officials at DVI spread rumors about him being homosexual, and "served him food with half portions and/or spit in his food." *Id.* In yet another action, plaintiff claimed that he received a hormone shot instead of a hepatitis shot, causing his body to go "through numerous changes and he is not gaining weight," which caused him to be labelled a homosexual. *Hall v. Deuel Vocational Institution*, E. D. Cal. Case No. 2:13-cv-1890 JAM, Docket # 9 at 2.

## DISCUSSION

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* at § 1915A(b)(1),(2). *Pro se* pleadings must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

3

A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (citation omitted). When a plaintiff seeks to proceed *in forma pauperis*, the court can "'dismiss those claims whose factual contentions are clearly baseless,'" such as "'claims describing fantastic or delusional scenarios.'" *Denton v. Hernandez*, 504 U.S. 25, 32 (1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 328 (1989)); *see also id.* ("reject[ing] the notion that a court must accept as 'having an arguable basis in fact' . . . all allegations that cannot be rebutted by judicially noticeable facts"). These pleading standards do not do away with the requirement that *pro se* pleadings be liberally construed.

Plaintiff's allegations that his food was spit on fall somewhere between the implausible and the delusional, and are insufficient to state a claim. The amended complaint and attachments thereto indicate that plaintiff saw glossy food and inferred that someone must have spit on it to make it glossy. That is not a reasonable inference because there are many reasons food can have a glossy appearance and plaintiff did not allege that he saw anyone spit on his food. Moreover, he has alleged in two other cases that officials at two other facilities also spit in his food, which make the allegations that it also happened at a third facility even less plausible. Leave to amend will be granted so that plaintiff can attempt to allege facts that will move this claim from the realm of unreasonable speculation to the realm of the plausible.

Plaintiff's allegations that he received half-portions of food are deficient. It is unclear whether he compared the food on his tray to the menu or his neighbor's tray as opposed to inferring that he was receiving half portions from the fact that he was not gaining weight. *See* Docket # 1 at 62 (July 5, 2013 health care services request form stating, "I would like to have some blood test done to see what, if anything unusual is in my blood. Because I haven't

4

1 grown weight in my facial cheek, arm and legs at this prison. And I eat every meal. I also had
2 this problem at the reception center.") His failure to gain weight does not alone support a
3 reasonable inference that he was receiving half-portions of food. Leave to amend will be granted
4 so that plaintiff can attempt to allege facts that state a plausible claim for relief.

Plaintiff's allegation that the food may have been microwaved does not state a claim upon which relief may be granted. Microwaving food does not violate the constitution.

Plaintiff's allegations that he received unwanted hormone shots intended to make him female or homosexual are delusional or at least implausible. He alleges that these shots were given to him while he was asleep; he did not feel the shots being administered and apparently never saw anyone actually giving him a shot. Plaintiff also alleged in another action that he had been given a shot at another facility that caused his body to undergo "changes in his body ('deformations') that only gay men supposedly exhibit." Similarly, his allegation that prison officials are putting "homo-preferred hormone pills" in his food is implausible because he has not alleged any facts that suggest this is more than mere speculation. Leave to amend will be granted so that plaintiff can attempt to allege facts that state a plausible claim for relief.[4]

Plaintiff's allegations that correctional officers said he was homosexual or looked effeminate fail to state a claim. Verbal harassment alone is not actionable under 42 U.S.C. § 1983. *See Freeman v. Arpaio*, 125 F.3d 732, 738 (9th Cir. 1997), *overruled in part on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008); *Rutledge v. Arizona Bd. of Regents*, 660 F.2d 1345, 1353 (9th Cir. 1981), *aff'd sub nom. Kush v. Rutledge*, 460 U.S. 719 (1983); *see, e.g., Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996), *amended* 135 F.3d 1318 (9th Cir. 1998) (disrespectful and assaultive comments by prison guard not enough to implicate 8th Amendment); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) (directing vulgar

---

[4] It is not clear whether plaintiff wants to assert a separate claim for the failure to test his blood or has included this information in support of his claim that he has been given unwanted hormone shots. If he wishes to assert a claim based on the failure to perform blood tests, plaintiff must allege facts showing a serious medical need and deliberate indifference to that need by one or more defendants. A prison official violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

5

language at prisoner does not state constitutional claim); *Burton v. Livingston,* 791 F.2d 97, 99 (8th Cir. 1986) ("mere words, without more, do not invade a federally protected right"). Other than possibly hurt feelings, plaintiff does not allege that there was any consequence of the correctional officers' teasing. An Eighth Amendment claim has not been stated on the facts alleged as plaintiff has not identified a serious risk to his safety or that the prison officials acted with deliberate indifference to a known risk.

Plaintiff's allegations that he was subjected to retaliation fails to state a claim because he provided no understandable description of the retaliation. "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). If plaintiff wishes to pursue this claim, he needs to identify the particular defendant(s) for this claim, allege facts showing what he did that prompted the alleged retaliation, allege facts showing what each defendant did or failed to do that amounted to retaliation, allege facts that plausibly show their adverse action was in response to his protected conduct, and allege that such actions chilled the exercise of his First Amendment rights.

Plaintiff's allegations that prison officials "corrupted" his legal mail are deficient. The allegations of the amended complaint regarding the mail claim are too confusing to understand and some of what plaintiff calls legal mail is not legal mail. Prisoners enjoy a First Amendment right to send and receive mail. *See Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (citing *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989)). The prisoner's rights with respect to mail differ depending on whether it is legal or non-legal mail. Only mail from his own attorney (and not mail from opposing counsel or from a public agency or court) would be confidential legal mail. *Cf. Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996), *amended*, 135 F.3d 1318 (9th Cir. 1998) (prison officials may open and inspect mail to prisoner from courts outside prisoner's presence because mail from courts, as opposed to mail from a prisoner's own lawyer, is not

"legal mail"); *Martin v. Brewer*, 830 F.2d 76, 78 (7th Cir. 1987) (mail from court to litigant generally is not legal mail). Leave to amend is granted so that plaintiff may attempt to allege facts showing that prison officials interfered with his mail. As with his other claims, plaintiff needs to allege facts that plausibly suggest one or more defendants interfered with his mail – alleging that mail did not get through to its intended recipient is not alone sufficient to state a claim against any particular defendant because mail is handled by many people between the time it leaves a sender's hand and reaches the recipient's hand.

Finally, for each instance on which plaintiff's constitutional rights allegedly were violated, plaintiff must (a) identify the date of the violation, (b) identify who violated his rights, (c) describe what happened, and (d) describe how it caused injury to him. As to every defendant he seeks to hold liable, Jones must name him/her in his second amended complaint and must link that defendant to each of the claims against him/her. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (liability under § 1983 arises only upon a showing of personal participation by a defendant).

Plaintiff has requested that counsel be appointed to assist him in this action. A district court has the discretion under 28 U.S.C. §1915(e)(1) to designate counsel to represent an indigent civil litigant in exceptional circumstances. *See Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986). This requires an evaluation of both the likelihood of success on the merits and the ability of the plaintiff to articulate his claims pro se in light of the complexity of the legal issues involved. *See id.* Neither of these factors is dispositive and both must be viewed together before deciding on a request for counsel under § 1915(e)(1). Here, exceptional circumstances requiring the appointment of counsel are not evident. The request for appointment of counsel is DENIED. (Docket # 16.)

**CONCLUSION**

Plaintiff's complaint is dismissed with leave to amend. Plaintiff must file an amended complaint no later than **October 3, 2014**, and must include the caption and civil case number used in this order and the words SECOND AMENDED COMPLAINT on the first page. Plaintiff

7

1 is cautioned that his second amended complaint must be a complete statement of his claims. 2 *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc). If plaintiff does 3 not file a second amended complaint by the deadline, the action will be dismissed.

4     IT IS SO ORDERED.

5 Dated: September 3, 2014

                                                       SUSAN ILLSTON
6                                              United States District Judge

**United States District Court**
For the Northern District of California

8